IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| CARMEN FIGUEROA-FLORES | |
| Plaintiff | |
| v. | Civil No. 06-1939(SEC) |
| HON. ANIBAL ACEVEDO-VILA, et al. | |
| Defendants | |

**OPINION AND ORDER**

Pending before the Court is Co-defendants Federico Hernández Denton's and Ivelisse Salazar-Napeoleoni's Motion to Dismiss (Docket # 12). Plaintiff filed an opposition to the motion (Docket # 19) and the moving Co-defendants replied (Docket # 22). For the reasons set forth below, the Motion to Dismiss will be **GRANTED.**

**Standard of Review**

Under Rule 12(b)(6) in assessing whether dismissal for failure to state a claim is appropriate, "the trial court, must accept as true the well-pleaded factual allegations of the complaint, draw all reasonable inferences therefrom in the plaintiff's favor, and determine whether the complaint, so read, limns facts sufficient to justify recovery on any cognizable theory." LaChapelle v. Berkshire Life Ins. Co., 142 F.3d 507, 508 (1st Cir. 1998) (citations omitted). But "[a]lthough this standard is diaphanous, it is not a virtual mirage." Berner v. Delahanty, 129 F.3d 20, 25 (1st Cir. 1997) citing Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988). In order to survive a motion to dismiss, "a complaint must set forth 'factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.'" Id. In judging the sufficiency of a complaint, courts must "differentiate between well-pleaded facts, on the one hand, and 'bald assertions, unsupportable conclusions, periphrastic circumlocution, and the like,' on the other hand; the

former must be credited, but the latter can safely be ignored." LaChapelle, 142 F.3d at 508 (quoting Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir.1996)). See also Rogan v. Menino, 175 F.3d 75, 77 (1st Cir. 1999). Courts, moreover, "will not accept a complainant's unsupported conclusions or interpretations of law." Wash. Legal Found. v. Mass. Bar Found., 993 F.2d 962, 971 (1st Cir. 1993).

**Factual Background**

Given the case's procedural stance, we review the facts as alleged in the complaint. Plaintiff, a sixty year old social worker, is a party to a case pending before the Puerto Rico Court of First Instance, Caguas section (hereinafter the Caguas court). On September 22, 2005, Plaintiff was arrested pursuant to a warrant for civil contempt. Plaintiff claims that this warrant was sought by Co-defendant Maribel Sánchez-Muñoz, a Family Law Special Prosecutor, and illegally issued by Co-defendant Salazar-Napoleoni, a Superior Court judge. Prior to the issuance and execution of the warrant, Plaintiff was not given an opportunity to contest the propriety of the contempt determination; Plaintiff was not advised that a civil contempt hearing would be held on September 21, 2005 nor was she served with an order to show cause why the warrant for contempt should not issue.

Plaintiff's arrest took place in the marshals' office at the Caguas court. Upon such arrest, Co-defendant Sánchez-Muñoz instructed Co-defendant Rivera-Reyes, a deputy marshal at the Caguas court, to place Plaintiff in a holding cell. Once Plaintiff was in the holding cell, Co-defendant Rivera-Reyes, acting pursuant to instructions received from Co-defendants Salazar-Napoleoni and Sánchez-Muñoz, ordered her to fully undress. Co-defendant Rivera-Reyes then went on to conduct a strip search and visual cavity inspection of Plaintiff. Because the holding cell where the search took place was visible from the marshals' office, several male marshals who were at the office were able to observe the search as it was conducted. It bears noting that Plaintiff was not a suspect of contraband or drug-dealing, nor were there any indications that she was a threat to herself or any other person.

**Civil No. 06-1939(SEC)** 3
_____

During the search, Plaintiff was nervous; as a result thereof, she lost control of her bodily functions.  Plaintiff was later taken to the afternoon court session, still soiled from the search and attendant consequences.  There she obtained legal counsel who successfully argued for the withdrawal and vacation of the civil contempt order and arrest warrant.  Unsurprisingly, as a result of these events, Plaintiff suffered emotional distress and mental anguish.

This lawsuit ensued.  Plaintiff seeks redress in an amount of no less than $2,500,000 for Defendants' violations of her rights under the Fourth and Fifth Amendments of the U.S. Constitution.  The named defendants are: (1) the Commonwealth of Puerto Rico; (2) the General Court of Justice; (3) Aníbal Acevedo-Vilá, the governor of Puerto Rico, in his personal and official capacity; (4) Federico Hernández-Denton, Chief Justice of the Puerto Rico Supreme Court, in his personal and official capacity; (5) Ivelise Salazar-Napoleoni, in her personal and official capacity; (6) Maribel Sánchez-Muñoz, in her personal and official capacity; and (7) Marta Rivera-Reyes, in her personal and official capacity.

**Applicable Law and Analysis**

Co-defendants Hernández-Denton and Salazar-Napoleoni move for dismissal of the complaint as to them, arguing that: (1) the Eleventh Amendment bars the claims against them in their official capacities; (2) in their personal capacities, they are entitled to judicial immunity; and (3) Plaintiff did not plead any cognizable §1983 claim against either of the moving co-defendants. We address each argument in turn.

<u>I. Claims against moving Co-defendants in their official capacities</u>

Co-defendants Salazar-Napoleoni and Hernández-Denton posit that the claims against them in their official capacities should be dismissed as barred by the Eleventh Amendment.

The Eleventh Amendment to the Constitution of the United States provides that:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State. U.S.C.A. Const. Amend. XI.

**Civil No. 06-1939(SEC)**                                                                                                           4
_____

Despite the limited scope of the Amendment's text, the U.S. Supreme Court has stated that the Eleventh Amendment must be understood "to stand not so much for what it says, but for the presupposition ... which it confirms".  Seminole Tribe of Florida v. Florida, 517 U.S. 44, 54 (1996) (quoting Blatchford v. Native Village of Noatak, 501 U.S. 775, 779 (1991)).  "That presupposition [...] has two parts: first, that each State is a sovereign entity in our federal system; and second, that '[i]t is inherent in the nature of sovereignty not to be amenable to the suit of an individual without its consent.'"  Id. (quoting Hans v. Louisiana, 134 U.S. 1, 10 (1890)).  Stated succinctly, the general rule is that "the Constitution does not provide for federal jurisdiction over suits against nonconsenting States."  Kimel v. Florida Board of Regents, 528 U.S. 62, 72-73 (2000).

The Commonwealth of Puerto Rico, along with the fifty states of the Union, is shielded by the Eleventh Amendment.  See, Maysonet-Robles v. Cabrero, 323 F.3d at 48 n.3, Jusino Mercado v. Commonwealth of Puerto Rico, 214 F.3d 34, 39 (1st Cir. 2000); Ortiz-Feliciano v. Toledo-Dávila, 175 F.3rd 37, 39 (1st Cir. 1999).[1]  Furthermore, it is settled law that the protection afforded by the Amendment extends not only to the states themselves, but also to their instrumentalities and government officials acting in that capacity.  See, Maysonet-Robles v. Cabrero, 323 F.3d 43, 48-49 (1st Cir. 2003), Wojcik v. Mass. State Lottery Comm'n, 300 F.3rd 92, 99 (1st Cir. 2002).

Despite the Amendment's formidable protection, the state's sovereign immunity may be circumvented under some circumstances.  In order to enforce compliance with federal law, the Federal Government can bring suit against a State in federal court.  Seminole Tribe, 517 U.S.

---

[1] See also, Examining Board v. Flores de Otero, 426 U.S. 572, 596 (1976) (recognizing that "Puerto Rico occupies a relationship with the United States that has no parallel" in the latter's history); Rodríguez v. Popular Democratic Party, 457 U.S. 1, 8 (1982) ("Puerto Rico, like a state, is an autonomous political entity, 'sovereign over matters not ruled by the Constitution.'") (quoting Calero-Toledo v. Pearson Yacht Leasing Co., 416 U.S. 663, 673 (1974)).  For a more detailed discussion of the U.S.-Puerto Rico relationship, see, Córdova & Simonpietri Ins. Agency Inc. v. Chase Manhattan Bank, 649 F.2d 36 (1st Cir. 1981), U.S. v. Vega-Figueroa, 984 F. Supp. 71 (D.P.R. 1997), and authorities cited therein.

**Civil No. 06-1939(SEC)**                                                                                                              5
_____

at 71, n. 14 (citing United States v. Texas, 143 U.S. 621, 644-645 (1892)).  An individual may sue a state officer so as to "ensure that the officer's conduct is in compliance with federal law." Id. (citing Ex Parte Young, 209 U.S. 123 (1908)).  Additionally, a state may waive its immunity by consenting to suit, or Congress, in the exercise of its power to enforce the Fourteenth Amendment, may authorize such suit.  College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666 (1999).

The Court finds the proposition that Co-defendants Salazar-Napoleoni and Hernández-Denton in their official capacities are entitled to Eleventh Amendment immunity remarkably uncontroversial.  A suit against a government official in his official capacity is actually a suit against the entity for which the official works.  Brandon v. Holt, 469 U.S. 464, 471-472 (1985) ("... a judgment against a public servant 'in his official capacity' imposes liability on the entity that he represents, provided ... the public entity received notice and an opportunity to respond."). As such, the official capacity claims against Co-defendant Salazar-Napoleoni, a Superior Court Judge, are really directed at the Court of First Instance.  See, 4 P.R. Laws Ann. §25b (Court of First Instance constituted by Superior Court Judges and Municipal Court Judges).  By like token, official capacity claims against Co-defendant Hernández-Denton are claims against the Puerto Rico Supreme Court.  See, 4 P.R. Laws Ann. §24r (the Supreme Court is comprised of one Chief Justice and six Associate Justices).  Because both the Court of First Instance and the Supreme Court are part of the General Court of Justice, see, P.R. Laws Ann. §24b, the parties have framed the question of immunity with reference to the General Court of Justice.  We follow suit.

Plaintiff would have the Court hold that Eleventh Amendment immunity is not implicated as to the moving co-defendants in their official capacities either because the General Court of Justice is not an arm of the state and thus not entitled to share in the Commonwealth's sovereign immunity or because, by receiving federal funding for some programs, it has waived any entitlement to such immunity.  We address these arguments in their logical order.

The General Court of Justice encompasses the three strata of the Commonwealth Courts

**Civil No. 06-1939(SEC)**                                                                                                                   6
_____

and exerts its power and authority over the single judicial district that is the Commonwealth of Puerto Rico. Id. Because the General Court of Justice is the entity through which the Commonwealth exercises its judicial authority, it is, in essence, the Judicial Branch of the Commonwealth, organized in the way the Puerto Rico Legislature, acting pursuant to the Constitution, has deemed fit. See, Id; P.R. CONST. art. V, §1-2. This alone tends to show that the General Court of Justice is "an arm" of the Commonwealth. Or, perhaps more appropriately stated, an entire branch.

Although this leaves little doubt as to the General Court of Justice's entitlement to Eleventh Amendment immunity, we plod on, cognizant that Plaintiff has called into question the propriety of such a finding in light of Fresenius Med. Care Cardiovascular Res., Inc. v. P.R. and the Caribean Cardiovascular Center Corp 322 F.3d 56 (1st Cir. 2003). Upon application of the test set out in Fresenius, we find further confirmation that the General Court of Justice is entitled to take cover under the Commonwealth's immunity. As far as the fiscal relationship goes, the General Court of Justice both contributes to and depends on the Commonwealth's coffers. Court fees and fines are one source of income for the Commonwealth. 3 P.R. Laws Ann. §283b(n)(2)(C)(i). Central accounting of the courts' public property is left up to the Secretary of the Treasury, who is also charged with authorizing and paying for certain expenses of the General Court of Justice's employees (including judges). 3 P.R. Laws Ann. §283i (e) & (h)(c). As for general operational expenses, the Judicial Branch is entitled to receive a percentage –slated to reach the maximum 4% by fiscal year 2007-2008-- of the Commonwealth's annual revenues 23 P.R. Laws Ann. §104(a)(7). Shortfalls may be remedied by application to the Legislature for additional funds. Id. With regards to function, the General Court of Justice undeniably carries out a governmental function: as stated above, it exercises the Commonwealth's judicial authority. See also, P.R. CONST. art V, 4 P.R. Laws Ann. §24(b) (listing the Judicial Branch's main objectives). As for control of the General Court of Justice, the Constitution strikes the balance: judges are appointed by the Governor, with the advice and

**Civil No. 06-1939(SEC)**                                                                                                         7
_____

consent of the Senate; they serve for terms of office that are fixed by law;[2] removal of Supreme Court Justices is only possible via impeachment and of all other judges may only be done by the Supreme Court and for the reasons and with the process afforded by law; and the administration of the courts rests on the Chief Justice of the Supreme Court.  See, P.R. Const. Art. V, §§ 7-8,11. Although the Executive lacks overwhelming control over the General Court of Justice, that is a function of the separation of powers that is embodied in the Puerto Rico Constitution.  See, Acevedo-Vilá v. Meléndez-Ortiz, 2005 TSPR 79, 2005 WL 1348460 *2-3 (discussing separation of powers in the Puerto Rico government).

Per the discussion above, the Court concludes that the General Court of Justice is entitled to Eleventh Amendment immunity.[3]  To say more on that account would be superfluous.  As such, we turn to Plaintiff's alternative argument: that the General Court of Justice has waived its Eleventh Amendment immunity by receiving federal funds for certain programs.

As explained at the beginning of this section, a state may waive the protection conferred by the Eleventh Amendment.  One way to do so is by "consent to or participation in a federal program for which waiver of immunity is an express condition." Ramos-Piñero v. Puerto Rico, 453 F.3d 48, 51 (1st Cir. 2006)(citing New Hampshire v. Ramsey, 366 F.3d 1, 15 (1st Cir. 2004)). However, "the mere receipt of federal funds cannot establish that a State has consented to suit in federal court." Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 246-247 (1985). "A waiver must be unambiguously manifested, and because of that requirement, a state's mere participation in a federal program... has been held insufficient to demonstrate a state's waiver of its immunity." Mills v. Me., 118 F.3d 37, 50 (1st Cir. 1997) (quoting WJM, Inc. v. Massachussets

---

[2] Justices of the Puerto Rico Supreme Court hold their office during good behavior and up to the mandatory retirement age (70 years). See, P.R. Const. Art. V §§8, 10.  Judges of the Puerto Rico Court of Appeals hold office for 16 years.  4 P.R. Laws Ann. §24v.  Superior Court judges and Municipal Court judges have terms of office of 12 and 8 years, respectively. See, 4 P.R. Laws Ann. §25b.

[3] Other courts in the district have reached similar conclusions. See, Feliciano v. Tribunal Supremo de P.R., 78 F. Supp. 2d 4 )(D.P.R. 1999) (P.R. Supreme Court an arm of the Commonwealth).

**Civil No. 06-1939(SEC)**                                                                                                  8
_____

Dep't of Pub. Welfare, 846 F.2d 996, 1002 (1st Cir. 1988)).  See also, Hurst v. Texas Dept. of Assistive and Rehabilitative Serv., __ F.3d __, 2007 WL 890927 (5th Cir. 2007) ("A state waives its immunity by voluntarily participating in federal spending programs only when Congress includes a clear statement of intent to condition participation in the programs on a State's consent to waive its constitutional immunity.") (citing Atascadero).

Plaintiff has mentioned two programs which allegedly receive federal funding; she has not, however, identified the program(s) from which the federal funding derives nor the requisite clear Congressional statement that receipt of such funds is conditioned on the states' waiver of their sovereign immunity.  Instead, Plaintiff seeks to establish that the General Court of Justice has waived Eleventh Amendment immunity merely by receiving federal monies.  As explained in the case law cited above, sovereign immunity is not so easily renounced.

II. Claims against moving co-defendants in their personal capacities

Co-defendants Salazar-Napoleoni and Hernández-Denton next move for dismissal of the claims against them in their personal capacities, averring that they are protected by absolute judicial immunity.  Once again, Plaintiff opposes the dismissal, arguing, in essence, that such immunity is inapplicable to the facts of this case.

Generally, judges are immune from suits for monetary damages.  Mireles v. Waco, 502 U.S. 9 (1991).  This is "an immunity from suit, not just from ultimate assessment of damages." Id. at 11.  There is no question that judicial immunity applies in full force to actions brought under the aegis of 42 U.S.C. §1983.  See, Pierson v. Ray, 386 U.S. 547, 554-555 (1967).  In any such action, judicial immunity will require dismissal of the claims against the defendant judge so long as her actions may fairly be described as judicial in nature and were taken while she was vested with jurisdiction. See, Mireles, 502 U.S. at 11-12 ("immunity is overcome in two sets of circumstances[:] [f]irst, a judge is not immune from liability for nonjudicial actions... [s]econd, a judge is not immune from actions, though judicial in nature, taken in the complete absence of all jurisdiction") (citations omitted).

**Civil No. 06-1939(SEC)**                                                                                                          9
_____

  An action is judicial in nature if "it is a function normally performed by a judge, and to the expectations of the parties, *i.e.,* whether they dealt with the judge in his judicial capacity. Id. at 12. (quoting Stump v. Sparkman, 435 U.S. 349, 362 (1978)). See also, Badillo -Santiago v. Andreu-García, 70 F. Supp. 2d 84, 91 (D.P.R. 1999) ("Acts are judicial in nature if they are (1) normal judicial functions (2) that occurred in the judge's court or chambers and (3) centered around a case pending before a judge.") (citing Brewer v. Blackwell, 692 F.2d 387, 396-397 (5th Cir. 1982)). As for jurisdiction, judicial immunity will not unravel unless the judge acts in the complete absence of all jurisdiction. Mireles, 502 U.S. at 12 (citing Stump v. Sparkman, *supra*, at 356-57 and Bradley v. Fisher, 13 Wall. at 351). Judicial immunity applies even in the face of allegations of malice and corruption by the defendant judge. See, Bradley v. Fisher, 80 U.S. 335, 354 (1871) ("The allegation of malice or corrupt motives could always be made and if the motives could be inquired into judges would be subjected to the same vexatious litigation upon such allegations, whether the motives had or had not any real sustenance.")

  As may be seen from the above cited case law, judges enjoy "a comparably sweeping form of immunity." Forrester v. White, 484 U.S. 219, 225 (1988). This immunity was well known at common law, and apparently originated in the Middle Ages. Id. (citing Block, *Stump v. Sparkman and the History of Judicial Immunity*, 1980 Duke L.J. 879). The U.S. Supreme Court has justified judicial immunity in light of its salutary effects for the judicial system and the public in general: it discourages "inappropriate collateral attacks" and protects both "the finality of judgments" and "judicial independence", the latter one "by insulating judges from vexatious actions prosecuted by disgruntled litigants". Id. (citing Bradley, 13 Wall. at 347). Judicial immunity allows judges the necessary liberty "to exercise their independent judgment about the merits of a case without fear of being mulcted for damages should an unsatisfied litigant be able to convince another tribunal that the judge acted not only mistakenly but with malice and corruption". Dennis v. Sparks, 449 U.S. 24, 30 (1980) (citing, Pierson v. Ray, 386 U.S. 547, 554 (1967); Bradley v. Fisher, 13 Wall. at 349, 350).

**Civil No. 06-1939(SEC)**                                                                                                                                  10
_____

The action by Co-defendant Salazar-Napoleoni of which Plaintiff complains is the issuance of a warrant for her arrest for civil contempt. Plaintiff avers that this warrant was wrongly issued, as there had been a prior hearing on the matter of her civil contempt of which she was not advised and thus she was not given an opportunity to contest such an allegation. We have no difficulty in finding that Co-defendant Salazar-Napoleoni is shielded from this suit by judicial immunity. The act of ordering a litigant's arrest for civil contempt is a judicial act: in Puerto Rico, civil contempt serves as "the mechanism through which the courts ensure compliance with an order previously ignored by the party to whom it is directed." Alvarez v. Arias, 156 D.P.R. 352, 372 (2002) (our translation). Furthermore, Co-defendant Salazar-Napoleoni had jurisdiction to issue the arrest warrant for civil contempt. See, 4 P.R. Laws Ann. §24o(j).

Accepting as true --as we must at this stage-- Plaintiff's allegation that procedural defects marred the issuance of the arrest warrant, this does not mean that the court was thereby deprived of jurisdiction. "A judge is absolutely immune from liability for his judicial acts even if his exercise of authority is flawed by the commission of grave procedural errors." Stump v. Sparkman, 435 U.S. 349, 359 (1978). It is the complete absence of jurisdiction, and not merely actions in excess of jurisdiction, that preclude the applicability of judicial immunity. See, Bradley, 80 U.S. at 351-352 (explaining that when the judge is clearly without jurisdiction over the subject matter "any authority exercised is a usurped authority," whereas if jurisdiction over the subject matter is conferred by law, "the manner and extent in which the jurisdiction shall be exercised are generally as much questions for his determination as any other questions involved in the case"). See also, Cintrón-Rodríguez v. Pagán-Nieves 736 F. Supp. 411, 413 (1990) (judge absolutely immune from suit for damages stemming from incarceration due to contempt order; procedural errors, even grave ones, did not divest judge of immunity).

By like token, Plaintiff's averment that Co-defendant Salazar-Napoleoni ordered Co-defendant Rivera-Reyes to, upon Plaintiff's arrest, conduct a strip search, does not defeat judicial

**Civil No. 06-1939(SEC)**                                                                                                              11
_____

immunity. Such instructions exceeded the judge's authority, but as they were issued in the aid of a judicial action for which she had jurisdiction, *i.e.,* the arrest warrant, they are nonetheless encompassed by judicial immunity. See, Mireles v. Waco, 502 U.S. at 13 (defendant judge's authorization and ratification of use of excessive force by policemen exceeded his authority, but because it was an action taken in the aid of his jurisdiction over a matter before him, it could not be said that such action was taken in the absence of jurisdiction); King v. Myers, 973 F.2d 354 (4th Cir. 1992) (judicial immunity found applicable to magistrate who directed police officer to make warrantless arrest; arrestee was party in a custody case pending before the magistrate and she had taken part in a domestic dispute that had been brought to the magistrate's attention).

Co-defendant Salazar-Napoleoni's entitlement to judicial immunity thus settled, we turn to Co-defendant Hernández-Denton. Moving co-defendants posit that Co-defendant Hernández Denton is entitled to judicial immunity because any action he may have taken, or any omission he may have incurred in, was done pursuant to his constitutionally recognized authority to direct the administration of the Judicial Branch. See, P.R. CONST., art. V, §7. As such, the argument goes, his actions -or lack thereof- were taken per this constitutional grant of jurisdiction and are thus covered by judicial immunity.

Plaintiff's complaint includes a single allegation against Co-defendant Hernández-Denton: that he "failed to properly train and grant continued education to the other Defendants." Docket # 1 at ¶ 10. We agree that this allegation implicates Co-defendant Hernández-Denton's authority to direct the administration of the Puerto Rico courts. That does not mean, however, that Co-defendant Hernández-Denton is entitled to judicial immunity in this case.

As noted above, in order for judicial immunity to attach, the action in question must be judicial in nature. The mere fact that a judge performs an action does not make it judicial nor entitle the actor to immunity; "immunity is justified and defined by the *functions* it protects and serves, not by the person to whom it attaches." Forrester, 484 U.S. at 227. Nor is it dispositive, for the purpose of determining entitlement to judicial immunity, that in taking an administrative

**Civil No. 06-1939(SEC)**                                                                                                                    12
_____

action a judge was acting within the scope of his authority. Id., at 229-230.

Per the above discussion, whether Co-defendant Hernández-Denton is entitled to judicial immunity for actions he took pursuant to his administration authority over the Puerto Rico courts turns on whether we find that such actions may properly be deemed judicial in nature. In the aftermath of Forrester, several Circuit courts have addressed similar questions as to whether a judge's actions were judicial or administrative. See, *e.g.,* Roth v. King, 449 F.3d 1272 (D.C. Cir. 2006) (judges acted in their judicial capacity when selecting attorneys for inclusion in Family Court Attorney panels, and were entitled to judicial immunity); Gallas v. Supreme Court of Pennsylvania, 211 F.3d 760 (3rd Cir. 2000) (judge, who was the administrative judge of a division of the court, performed a judicial function and not an administrative one when she ordered the release of a petition for protection from abuse filed by the plaintiff's wife against the plaintiff); Morrison v. Lipscomb, 877 F.2d 463 (6th Cir. 1989) (chief judge of the district, who had declared a moratorium on the issuance of writs of restitution, was not entitled to judicial immunity for such an action; declaration of moratorium was not a judicial act). See also, Barrett v. Harrington, 130 F.3d 246, 256 n. 11 (6th Cir. 1997) (listing cases in which judges were found to act in their judicial capacity and cases in which they were found to act outside thereof). The ultimate conclusion of such inquiries is heavily dependent on the facts alleged in the complaint as to the defendant judge, and is informed by traditional notions of a judge's role and the actions that pertain to such a role. See, Mireles, 502 U.S. at 12 (key elements in determining that an act is judicial are whether it is a function normally performed by a judge, and the parties' expectations, that is, whether they dealt with the judge in his judicial capacity). In any event, it bears noting that even when an action is found to be non-judicial in nature, other immunities may apply. See, Forrester, 484 U.S. at 230 (qualified immunity available to judges for discretionary, non judicial, decisions); Supreme Court of Virginia v. Consumers Union, 446 U.S. 719, 731-34 (1980) (legislative immunity available for legislative acts).

The allegations in the complaint against Co-defendant Hernández-Denton are scarce:

essentially, Plaintiff claims that Co-defendant Hernández-Denton failed to train the other co-defendants. We cannot say, from this allegation, that Co-defendant Hernández-Denton acted in a judicial nature. Providing general training to the personnel of the judiciary is not a normal judicial function; it need not occur in any judge's courtroom or chambers; and, it does not center around cases pending before the judge. See, Badillo-Santiago, 70 F. Supp. 2d at 91. See also, Barrett v. Harrington, 130 F.3d 246, 255 (6th Cir., 1997) (because the "touchstone for judicial immunity is the function of dispute resolution, ... anytime an action taken by a judge is not an adjudication between parties, it is less likely that the act is a judicial one") (citations and internal quotation marks omitted).

That does not mean, however, that Co-defendant Hernández-Denton may be held liable on the basis of the allegations included in the complaint. As an alternative ground for dismissal, Co-defendant Hernández-Denton posited that Plaintiff's complaint failed to plead a viable §1983 action against him. We agree.

"In an action brought under §1983, supervisors are not automatically liable for the misconduct of those under their command." Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000). "Supervisory liability can be grounded on either the supervisor's direct participation in the unconstitutional conduct, or through conduct that amounts to condonation or tacit authorization." Whitfield v. Meléndez-Rivera, 431 F.3d 1, 14 (1st Cir. 2005) (citing Camilo Robles v. Zapata, 175 F.3d 41, 44 (1st Cir. 1999)). Unless the supervisor directly participated in the deprivation of the plaintiff's constitutional rights, he may only be held liable if: "(1) the behavior of his subordinates results in a constitutional violation and (2) the supervisor's action or inaction was affirmatively linked to the behavior in the sense that it could be characterized as supervisory encouragement, condonation or acquiescence or gross negligence amounting to deliberate indifference." Id. (quoting Hegarty v. Somerset County, 53 F.3d 1367, 1379-1380 (1st Cir. 1995)).

Plaintiff does not allege that Co-defendant Hernández-Denton was on notice that his

___

subordinates had engaged in conduct that deprived others of their constitutional rights and yet chose to disregard such conduct. See, Rodríguez-Esteras v.Solivan-Diaz, 266 F. Supp. 2d 270, 282-283 (D.P.R. 2003) ("Once an official has actual or constructive knowledge of the deprivations, his failure to stop the conduct may constitute a constitutional violation") (citations omitted). Nor does Plaintiff claim that there was a history of widespread abuse of citizens' Fourth Amendment rights in the Puerto Rico courts, so as to alert Co-defendant Hernández-Denton of ongoing violations. See, Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 582 (1st Cir. 1992).

Finally, merely alleging that a supervisor failed to train his subordinates is patently insufficient to establish a §1983 claim against the supervisor. Failure to train claims may, in appropriate circumstances, lead to an imposition of liability on a supervisor or a municipality. See, Calvi v. Knox County, 470 F.3d 422, 429 (1st Cir. 2006) (liability will attach if "the municipality fails to provide adequate training notwithstanding an obvious likelihood that inadequate training will result in the violation of constitutional rights") (quoting Whitfield, 431 F.3d at 10). However, an assertion that a supervisor "failed to train" his subordinates and that he should be held liable for such failure, without identifying the factual underpinnings of such failure, nor identifying the causal nexus between the failed training and the street-level misconduct, is not enough. See, Rodríguez-Vázquez v. Cintrón-Rodríguez, 160 F. Supp. 2d 204 (D.P.R. 2001) (dismissing claims against Police Superintendent; broad and general allegations of inadequate training and supervision of the police force that are not linked to the particular defendants joined in the action insufficient to state a claim against the superintendent); Rodríguez-Esteras, 266 F. Supp. 2d 270 (dismissing failure to train claim against police superintendent for failure to plead minimum facts in support of such a claim).

### III. Other claims

The preceding discussion centers around Plaintiff's §1983 claims against the moving Co-defendants. There are, however, further claims as to which Co-defendants Hernández-Denton

**Civil No. 06-1939(SEC)**                                                                                           15
_____

and Salazar-Napoleoni request dismissal. We address these briefly.

Co-defendants Hernández-Denton and Salazar-Napoleoni argue that any claim against them under Art. 1802 of the Puerto Rico Civil Code must be dismissed. We agree. This court is precluded from entertaining the Art. 1802 claim against the moving Co-defendants in their official capacity. See, Díaz-Fonseca v. Puerto Rico, 451 F.3d 13, 33 (1st Cir. 2006) ("Although the Commonwealth has consented to be sued for damages in actions brought under the Commonwealth general negligence statute, such consent does not extend to actions filed in any courts but the Commonwealth's own."). As for the Art. 1802 claims against the moving Co-defendants in their personal capacities, it is precluded by the Puerto Rico doctrine of judicial immunity. See, Feliciano-Rosado v. Matos, 110 D.P.R. 550 (1981) (no absolute judicial immunity in claims under Art. 1802; however, in order for a tort claim against a judge for his malicious or corrupt actions in the performance of his judicial duties to go forward, the plaintiff must establish that the actions for which she claims redress later resulted in a criminal conviction or impeachment of the defendant judge).

In her opposition to the motion to dismiss, Plaintiff also asserts that she may bring claims under 42 U.S.C. §1985 and §1986. We harbor serious doubts as to whether Plaintiff appropriately stated a claim under either section. See, Donahue v. City of Boston, 304 F.3d 110, 122 (stating elements of §1985(3)[4] claim and explaining that such claims require that the plaintiff show, *inter alia*, that some class-based animus lay behind the conspirators' actions); Henessy v. City of Melrose, 194 F.3d 237, 244 (1st Cir. 1999) (failure to establish §1985 claim dooms §1986 claim). In any event, the immunities discussed with regards to §1983 –Eleventh Amendment and judicial immunity– apply to these additional claims. See, Johnson v. Walgreen, 980 F.2d 721,

---

[4] Because subsections (1) and (2) of §1985 appear inapplicable, the Court assumes that Plaintiff wishes to bring a §1985(3) claim. See, Donahue, 304 F.3d at122 n.9 (assuming that Plaintiff intended to assert a §1985(3) claim since, by its own terms, §1985 (1), --which protects federal officers from those conspiring to prevent them from discharging their duties– and §1985(2) –which is aimed at protecting witnesses in federal court– were plainly inapplicable).

**Civil No. 06-1939(SEC)** 16
_____

*5 (1st Cir. 1992) (claim under §1985(3) barred by Eleventh Amendment immunity); Scaglione v. Mamaroneck Union Free School Dist., 47 Fed. Appx. 17 *1 (2nd Cir. 2002) (unpublished) (same); Sherez v. State of Hawai'i Dept. of Educ., 396 F. Supp. 2d 1138, 1143 (D. Hawai'i 2005) (same); Cushing v. Sausser, 889 F.2d 1094 *1 (9th Cir. 1989) (unpublished) (probation officer who prepared presentence report for court entitled to judicial immunity as to either §1983 or §1985(3) claim); Van Sickle v. Holloway, 791 F.2d 1431, 1434-36 (10th Cir. 1986) (dismissing §1985 claims against judges because they were entitled to judicial immunity); Shwartz v. Weinstein, 459 F.2d 882 (8th Cir. 1972) (same); Agnew v. Moody, 330 F.2d 868, 869 (9th Cir. 1964) (judicial immunity applies to claims under §1985).

  IV. Motion Joining and Adopting Motion to Dismiss

  Co-defendants Maribel Sánchez, Marta Rivera-Reyes, and Aníbal Acevedo-Vilá filed a motion joining and adopting Co-defendants Salazar-Napoleoni's and Hernández-Denton's request for dismissal (Docket # 13). Plaintiff did not oppose this motion.

  As some of the arguments set forth in Co-defendants Salazar-Napoleoni's and Hernández-Denton's motion are applicable to Co-defendants Sánchez, Rivera-Reyes, and Acevedo-Vilá, and require no further argumentation by these defendants, we **GRANT** the motion for joinder. Accordingly, and per the discussion above regarding the Eleventh Amendment, the claims against Co-defendants Sánchez, Rivera-Reyes, and Acevedo-Vilá in their official capacities must be **DISMISSED.** Similarly, Plaintiff failed to state a claim under §1983 with regards to Co-defendant Acevedo-Vilá. As with Co-defendant Hernández-Denton, the lone allegation against Co-defendant Acevedo-Vilá is that he failed to "properly train and grant continued education to the other Defendants." Docket # 1, ¶10. For the reasons explained above with regards to Co-defendant Hernández-Denton, this averment is insufficient.

  As for the remaining claims against co-defendants Sánchez and Rivera-Reyes, the arguments set forth in Co-defendants Salazar-Napoleoni's and Hernández-Denton's motion are not directly applicable to such claims. If these co-defendants seek dismissal of the pending

_____

claims against them, they must present the appropriate arguments via their own dispositive motion.

### Conclusion

For the reasons stated above, all claims against Co-defendants Salazar-Napoleoni, Hernández-Denton, and Acevedo-Vilá and the official capacity claims against Co-defendants Rivera-Reyes and Sánchez will be **DISMISSED WITH PREJUDICE.** Partial Judgment will be entered accordingly.

**SO ORDERED.**

In San Juan, Puerto Rico, this 4th day of June 2007.

s/ *Salvador E. Casellas*
SALVADOR E. CASELLAS
U.S. Senior District Judge