**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

CARMEN FIGUEROA-FLORES    *
                          *
    Plaintiff             *
                          *
v.                        *     **Civil No. 06-1939(SEC)**
                          *
HON. ANÍBAL ACEVEDO-VILÁ, et al.*
                          *
    Defendants            *
**********************************

**OPINION AND ORDER**

    Before the Court is Defendant Maribel Sánchez's (hereinafter "Sánchez") Motion for Judgment on the Pleadings (Docket #38) and her MOTION restating the Arguments set forth in the Motion for Judgment on the Pleadings (Docket # 50), and Plaintiff's opposition thereto (Docket #51). Since the motion at Docket # 50 supercedes the one at Docket # 38 the Motion for Judgment on the Pleadings (Docket # 38) is **MOOT**. After reviewing the parties' filings and the applicable law, Sánchez' Motion restating the Arguments set forth in the Motion for Judgment on the Pleadings is **DENIED**.

    **Standard of Review**

    *Federal Rule of Civil Procedure 12 (c)*

    Fed. R. Civ. P. 12(c) states that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." In ruling on a motion to dismiss pursuant to Rule 12(c), the Court will apply the same standards for granting relief that it would have employed had the motion been brought under Rule 12(b)(6). See, Charles Alan Wright & Arthur Miller, 5A Federal Practice and Procedure, § 1367 (2003); see also, Slotnick v. Garfkinkle, 632 F.2d 136, 165 (1st Cir. 1980).

    To survive a Rule 12(b)(6) motion, Plaintiffs "well-pleaded facts must possess enough heft to show that [they are] entitled to relief." Clark v. Boscher, 514 F. 3d 107, 112 (1st Cir. 2008). In evaluating whether Plaintiffs are entitled to relief, the Court must accept as true all of their "well-pleaded facts [and indulge] all reasonable inferences therefrom." Id. However, Plaintiffs must rely in more than unsupported conclusions or interpretations of law, as these

**Civil No. 06-1939(SEC)**                                                                                                               2
_____

will be rejected. Id. That is, "factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all allegations in the complaint are true." Parker v. Hurley, 514 F. 3d 87, 95 (1st Cir. 2008). Therefore, "dismissal for failure to state a claim is appropriate if the complaint fails to set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Gagliardi v. Sullivan, 513 F. 3d 301, 305(1st Cir. 2008). The Court "may augment the facts in the complaint by reference to documents annexed to the complaint or fairly incorporated into it, and matters susceptible to judicial notice." Id. at 305-306.

**Factual and Procedural Background**

The original Complaint in this suit was filed by Carmen Figueroa-Flores (hereinafter "Figueroa") on September 20, 2006. See, Docket # 1. Defendants Federico Hernández-Denton and Ivelise Salazar-Napoleoni filed a Motion to Dismiss under Rule 12(b)(6). See, Docket # 12. Defendants Maribel Sánchez, Marta Rivera-Reyes, and Aníbal Acevedo-Vilá then moved to join said motion. See, Docket # 13. Plaintiff filed her Opposition at Docket ## 18 & 19, and Defendants Federico Hernández-Denton and Ivelise Salazar-Napoleoni replied at Docket #22.

The Court entered its Opinion and Order and Partial Judgment on June 4, 2007, dismissing with prejudice all claims against Federico Hernández-Denton, Ivelise Salazar-Napoleoni, and Aníbal Acevedo-Vilá. See, Docket ## 25 & 26. The Court also dismissed with prejudice plaintiff's claims against Maribel Sánchez, and Marta Rivera-Reyes in their official capacities. See, Docket # 26. Defendant Maribel Sánchez filed the instant Motion for Judgment on the Pleadings (Docket # 38) and re-stated her arguments in favor of dismissal (Docket # 50) after plaintiff filed the Amended Complaint on October 5, 2007 (Docket # 46). Plaintiff filed her opposition at Docket # 51.

As noted above, the Court must accept all facts pleaded by the non-moving party as true when determining whether to grant a 12(c) motion. Thus, we recite the facts stated in

**Civil No. 06-1939(SEC)** 3
_____

the Amended Complaint.

Figueroa was involved in a custody dispute in the Caguas Court of Minors. See, Docket # 46 ¶¶ 3.3-3.5. In August of 2005, Figueroa, who was proceeding *pro se* at the time, filed a motion for the continuance of a hearing that was scheduled for September 1, 2005. Id. at ¶ 3.5. She believed at the time that this was sufficient to vacate the hearing date. Id. Figueroa reported to the Marshal's Office in the Caguas Court on September 22, 2005, after receiving a form informing her that she should do so in order to receive a "notification." Id. at ¶ 3.6 & 3.7. Once there, she was told to proceed to a courtroom that was presided by the judge handling the custody dispute case. Id. at ¶ 3.7. After waiting in the courtroom for some time, Figueroa was arrested for civil contempt. Id. at ¶ 3.8. The reason given for the arrest was that she allegedly failed to comply with some Court orders pertaining to the child who was the object of the custody dispute. Id. at ¶ 3.9. Figueroa's alleged non-compliance was to be discussed at the hearing she was absent from on September 1, 2005 . Id. Figueroa had received no notice of the arrest order that had been entered against her prior to her appearance at the Court. Id. at ¶ 3.10.

While Figueroa waited in a holding cell for several hours, Sánchez, a family law prosecutor involved in the custody case, ordered Figueroa's strip search, and body and cavity search. Id. at ¶ 3.11 & 3.15. Marshal Marta Rivera-Reyes performed said strip, body, and cavity search. Id. at ¶ 3.12. Rivera-Reyes indicated that she had been ordered to perform such searches and instructed Figueroa, against Figueroa's pleas, to undress completely, to kneel down in order to open her body's cavities for inspection, and to assume positions that would permit the application of pressure to both her vaginal area and her anus in order to force the ejection of any objects therein. Id. at ¶ 3.12-3.13. The searches were performed in an area that made them visible to other court officers, and visitors to the holding area. Id. at ¶ 3.16. Thus, when Figueroa expelled bodily fluids and wet herself as a result of being ordered to push against her vaginal and anal areas, various other persons besides Marshal

Rivera-Reyes, were able to watch. Id. at ¶ 3.17.

On that same day, Figueroa returned to the courtroom, handcuffed and still unwashed from the strip and cavity searches, for a hearing in the custody case she was participating in while Defendant Sánchez was present in the room. Id. at ¶ 3.18 & 3.19. After procuring legal counsel to argue for her, Figueroa was able to have the contempt citation against her vacated on that same date. Id. at ¶ 3.20.

**Applicable Law and Analysis**

Sánchez's Motion on the Pleadings revolves around her claim to prosecutorial immunity and/or qualified immunity to liability stemming from the actions alleged in the complaint. We discuss the merits of her arguments below.

**A. Prosecutorial Immunity**

Absolute immunity protects prosecutors in their role of "advocates for the State." Guzmán-Rivera v. Rivera-Cruz, 55 F.3d 26, 29 (1st Cir. 1995) (citations omitted). Therefore, a prosecutor is entitled to absolute immunity for any conduct or action which falls within the duties of their employment as prosecutors of the State. See, Harrington v. Almy, 977 F. 2d 37, 40-42 (1st Cir. 1993) (holding that a prosecutor's decision to charge a person with a crime falls squarely within the functions covered by absolute immunity) (citing, Imbler v. Pachtman, 424 U.S. 409, 431 (1976)). In Imbler, the U.S. Supreme Court specifically held that "in initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under s 1983." Id. at 431. Following this lead, the First Circuit has held that a prosecutor is immune from suit for actions taken as part of his or her quasi-judicial role, namely, the presentation of evidence to the grand jury and the decision to try a defendant for a particular crime. Celia v. O'Malley, 918 F. 2d 1017, 1020 (1st Cir. 1990). The First Circuit has also held that a prosecutor's failure to reveal exculpatory evidence, long after a defendant is convicted, falls within the scope of the prosecutor's role and, thus, is deserving of absolute immunity from suit. Reid v. State of New Hampshire, 56 F.3d 332, 338

_____

(1st Cir. 1995).

Thus, prosecutors enjoy a broad protection against liability from acts committed in furtherance of their duty. However, this protection is not ever-present and does not extend to acts in which prosecutors over-reach past the scope of their tasks. The present case is one of those instances. Ordering a strip search, and a body and cavity search is simply not one of the tasks involved in their role as advocates. If Plaintiff's pleadings are true, and for the purpose of this motion we must treat them as such, then Defendant Maribel Sánchez went beyond her role as prosecutor when she ordered the searches, and is, thus, not enshrouded in the mantle of prosecutorial immunity.

**B. Qualified Immunity**

Qualified immunity constitutes a right not to stand trial or face the burdens of litigation. See, Saucier v. Katz, 533 U.S. 194, 201 (2001). Thus, in order to avoid subjecting state officials to unnecessary and burdensome discovery or trial proceedings, courts should rule on the qualified immunity issue from the beginning, focusing on the characterization of the constitutional right in controversy and deciding, whether from the facts alleged in the complaint, a constitutional violation could be found. See, Id. at 201; Judge v. City of Lowell, 160 F.3d 67, 73 (1st Cir 1998).

Determining whether a defendant is entitled to qualified immunity requires application of a three-part test: (1) whether the plaintiff has alleged a constitutional violation; (2) whether the law was clearly established that defendants' action violated a constitutional right of the plaintiff; and (3) whether a reasonable official would have understood that his actions violated a constitutional right. Rivera-Jiménez v. Pierluisi, 362 F. 3d 87, 93 (1st Cir. 2004)(hereinafter Pierluisi).

The First Circuit's pithy statement in Swain v. Spinney, 117 F.3d 1 (1st Cir. 1997), provides that "[t]he Fourth Amendment right to be free from unreasonable strip searches has long been clearly established in this circuit[.]" Id. at 9. The Supreme Court in Bell v.

**Civil No. 06-1939(SEC)** 6

___

Wolfish, 441 U.S. 520 (1979), created a balancing test for courts to follow. Thus, "[c]ourts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." Id. at 559. In Wolfish the Supreme Court held that conducting strip, and body and cavity searches of inmates after contact visits did not violate the Fourth Amendment because they had penological justifications, in particular maintaining institutional security. See generally, Wolfish, 441 U.S. 520. However, in a long line of cases, various Circuits, including the First, have held that in order to be "reasonable under *Wolfish*, strip and visual cavity searches must be justified by at least a reasonable suspicion that the arrestee is concealing contraband or weapons." Swain, 117 F.3d at 7.

Figueroa was arrested for civil contempt and had no prior criminal record. From the pleadings before the Court, we cannot find a reason to have regarded her as dangerous in any way or to think that she was concealing contraband or weapons.[1] In addition, from the complaint it does not appear that she was to come in contact with any other detainees and, as a result, create some institutional security issue. These searches were unreasonable under Wolfish as it is interpreted by the First Circuit in Swain. As a result, the first and second prongs of the qualified immunity test must give way. The facts as stated in Figueroa's Amended Complaint allege the clear violation of her constitutional rights, as shown in the judicial opinions cited above. These opinions all precede the events described in the Amended Complaint; thus, it was clearly established that defendant's actions violated Figueroa's constitutional rights.

We find the third prong of the qualified immunity test to be a nonstarter here. Any reasonable official should understand that performing unjustified strip, and body-cavity searches is a blatant violation of a person's Fourth Amendment constitutional rights. In

---

[1] It should be clear that by saying this, we are not prejudging the matter. Defendants may raise later on legal reasons to have performed the searches in question.

addition, Sánchez, as an attorney-at-law, must know that such actions are a breach of the rights enshrined in the Fourth Amendment.  As a result, we find that, under the present facts, Defendant Maribel Sánchez cannot lay claim to the protective armor of qualified immunity.

**Conclusion**

For the reasons set forth herein the Sanchez' Motion  restating the Arguments set forth in the Motion for Judgment on the Pleadings (Docket # 50) is **DENIED**.

**SO ORDERED.**

In San Juan, Puerto Rico, this 28th day of March, 2008.

*S/Salvador E. Casellas*
SALVADOR E. CASELLAS
United States District Judge