## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

CARMEN FIGUEROA-FLORES     *
                          *
     Plaintiff           *
                          *
v.                        *      **Civil No. 06-1939 (SEC)**
                          *
HON. ANIBAL ACEVEDO-VILA,    *
et al.                      *
                          *
     Defendants       *
*************************************

## OPINION AND ORDER

Pending before the Court is Plaintiff Carmen Figueroa-Flores's ("Figueroa" or "Plaintiff") Motion for Leave to File Amended Complaint (Docket # 66), and the Second Amended Complaint tendered therein (Docket # 66-2). Defendants Marta Rivera- Reyes and Maribel Sanchez-Muñoz (collectively "Defendants') opposed (Docket # 74), and Plaintiff replied (Docket # 77).  For the reasons set forth below, Plaintiff's motion to amend is **GRANTED in part and DENIED in part.**

### Factual Background

Figueroa, a sixty year old social worker, filed suit against Defendants[1], under Section 1983 of the Civil Rights Act of 1964, 42 U.S.C. § 1983, the Fourth, Fifth, Eighth, and Fourteenth Amendments of the U.S. Constitution, and Article 1802 of the Puerto Rico Civil Code, 31 P.R. Laws Ann. tit. 31, § 5141, seeking indemnization for Defendants' violations of her constitutional rights. According to the complaint, on September 22, 2005, Plaintiff was arrested pursuant to a warrant for civil contempt. She claims that this warrant was sought by Co-defendant Maribel Sánchez-Muñoz ("Sánchez-Muñoz"), a Family Law Special Prosecutor, and illegally issued by Co-defendant Ivelisse Salazar-Napoleoni, a Superior Court judge. According to Figueroa, prior to the issuance and

---

[1] Pursuant to this Court's prior Opinion & Order, Plaintiff's claims against Ivelisse Salazar-Napoleoni, Federico Hernández-Denton, and Anibal Acevedo-Vilá, and the official capacity claims against Co-defendants Marta Rivera-Reyes and Maribel Sánchez-Muñoz were dismissed with prejudice**.** Docket # 25.

_____

execution of the warrant, she was not given an opportunity to contest the propriety of the contempt determination; she was not advised that a civil contempt hearing would be held on September 21, 2005, nor was she served with an order to show cause why the warrant for contempt should not be issued.

Upon Figueroa's arrest in the marshals' office at the Caguas Court, Sánchez-Muñoz instructed Marta Rivera-Reyes ("Rivera-Reyes"), a deputy marshal at the Caguas court, to place Figueroa in a holding cell.  Once Figueroa was in the holding cell, Rivera-Reyes ordered her to fully undress.  Rivera-Reyes then went on to conduct a strip search and visual cavity inspection of Figueroa.  Because the holding cell where the search took place was visible from the marshals' office, several male marshals who were at the office were able to observe the search as it was conducted.  Figueroa was not suspect of possessing contraband or drug-dealing, nor were there any indications that she was a threat to herself or any other person.

During the search, Figueroa was nervous, and as a result thereof, she lost control of her bodily functions.  She was later taken to the afternoon court session, handcuffed, and still soiled from the search and attendant consequences. There she obtained legal counsel, who successfully argued that the civil contempt order and arrest warrant be vacated. As a result of these events, Figueroa suffered emotional distress and mental anguish.

On April 25, 2008, Plaintiff requested leave to amend the complaint in order to include as defendants Julio Jurado-Valentín, Chief Marshal in the Puerto Rico Marshal's Service, and Alfonso Díaz, First Deputy to the Chief Marshal. Docket # 66. In the amended complaint, Plaintiff includes a "Preliminary Statement" stating that the instant suit "is a civil rights class action for damages," and requests declaratory judgment, compensatory and punitive damages, attorney's fees, costs, and interest. Id.

**Standard of Review**

Fed. R. Civ. P.15(a) provides that a party may amend its pleadings once, as a matter of course, before being served with a responsive pleading. However, after a responsive pleading has

_____

been filed, a party may only amend its pleading with leave of court or with the opposing party's

written consent.  Pursuant to said rule, leave to amend pleadings "shall be freely given when justice

so requires"  The First Circuit has held that "the rule reflects a liberal amendment policy, [sic] but

even so, the district court enjoys significant latitude in deciding whether to grant leave to amend."

ACA Fin. Guar. Corp. v. Advest, Inc., 512 F.3d 46, 55 (1st Cir. 2008) (citing  O'Connell v. Hyatt

Hotels of P.R., 357 F.3d 152, 154 (1st Cir. 2004). The timing and the context in which a motion to

amend is filed are crucial to the court's ruling on the issue. Steir v. Girl Scouts of the USA, 383 F.3d

7, 12 (1st Cir. 2004). Requests for leave to amend have been denied due to "undue delay, bad faith

or dilatory motive...repeated failure to cure deficiencies by amendments previously allowed, undue

prejudice to the opposing party...[and] futility of amendment." Advest, Inc., 512 F.3d at 56 (citing

Foman v. Davis, 371 U.S. 178, 182 (1962)).

        The burden on a plaintiff seeking to amend a complaint becomes more exacting as the case

progresses.  Scheduling orders typically establish a cut-off date for amendments which replaces the

liberal default rule with the more demanding "good cause" standard of FED. R. CIV. P. 16(b).  Steir,

383 F.3d at 12 (citing O'Connell, 357 F.3d at 154-155). Whereas Rule 15(a) focuses on the moving

party's bad faith, and the prejudice to the opposing party, Rule 16(b)'s "good cause" standard

emphasizes the diligence of the party seeking the amendment. O'Connell, 357 F.3d at 155. Therefore,

the more a plaintiff delays, the more likely the motion to amend will be denied.  This, added to

factors such as whether the amendment requires the re-opening of discovery, additional costs, and

substantial changes to the course of the case, will necessarily influence the court's decision. Steir,

383 F.3d at 12. Moreover, when the motion to amend is filed after the opposing party has timely

moved for summary judgment, a plaintiff is required to show "substantial and convincing evidence"

to justify a belated attempt to amend a complaint. Steir, 383 F.3d at 12.

        However, Rule 16(b) recognizes "that the parties will occasionally be unable to meet these

deadlines because scheduling order deadlines are established relatively early in the litigation."

O'Connell, 357 F.3d at 155. Therefore, a scheduling order deadline may be extended by the court

_____

when the moving party shows that the deadline cannot reasonably be met despite exercising due diligence. Id.

### Applicable Law and Analysis

Figueroa requests leave to amend the complaint on two fronts. First, she seeks to add two of Rivera-Reyes' supervisors as defendants. Second, Plaintiff argues that the case be continued as a class action suit. Defendants Rivera-Reyes and Sanchez-Muñoz oppose. They argue that Plaintiff's request for leave to amend is untimely insofar as the Case Management Order issued by this Court established a July 2, 2007 cut-off date to amend the pleadings, and to add parties, and Plaintiff has failed to establish good cause under Rule 16(b) to justify said amendments. Defendants further argue that, even if Plaintiff's request to amend is found as timely, she has not met FED. R. CIV. P. 23's requirements for a class certification. Specifically, they contend that Plaintiff has not met the numerosity, commonality, typicality, and adequate representation elements of a class action under Rule 23(a).

In her reply, Plaintiff first addresses the timeliness issue. According to Plaintiff's counsel, prior to her appearance as such on October 5, 2007, no discovery had been conducted in the present case. Plaintiff contends that on the same date of her new counsel's notice of appearance, said counsel also filed the Amended Complaint, and shortly after, both parties began to actively engage in discovery. Plaintiff further notes that in the Rule 26 Report, she informed the opposing party about the possibility of amending the complaint as discovery progressed. Moreover, Plaintiff argues that she filed the Motion for Leave to Amend the Complaint on April 25, 2008, that is, the day after Rivera-Reyes' deposition. She further notes that the instant motion was filed three days before Sanchez-Muñoz filed her answer to the complaint, five days before the parties filed the joint case management memorandum, and approximately six weeks before the first Case Management Conference. Considering the case's procedural background, Plaintiff argues that there is no prejudice to the opposing party, and Defendants argument as to the July 2, 2007 cut-off date is unreasonable. More so, considering that Defendants themselves filed their opposition the instant motion well after

_____

the 10-day period allowed by the local rules. As such, Plaintiff argues that her request to amend the complaint is timely, and justified. This Court agrees. In light of the particular procedural hurdles in the instant case, Plaintiff acted with diligence, and thus, has shown good cause to file an amended complaint. This Court notes that the present motion was filed the day after Rivera-Reyes' deposition, which is the crucial source of information upon which Plaintiff bases her request. Furthermore, Plaintiff seeks to substitute the unnamed defendants with Rivera-Reyes' supervisors. As such, Plaintiff's request to amend the complaint to include Julio Jurado-Valentin and Alfonso Diaz as defendants in the instant case is **GRANTED**.

However, Defendants also object to Plaintiff's request that the instant case be treated as a class action. This Court notes that Plaintiff has not filed a motion requesting class certification under Rule 23. Instead, the amended complaint includes a short and plain statement of her claims, and seeks relief for the class as a whole, exclusively as to Jurado-Valentin and Diaz. Plaintiff alleges that she represents:

> all people arrested and detained in Puerto Rico courthouses, on charges which did not involve a weapon, drugs, contraband or a violent felony, who have been strip searched and/or bodily cavities searched between September 22, 2005 (to the present), in holding cells in Puerto Rico courthouses, due to a policy and practice of the Puerto Rico Marshal's Service which requires such searches upon arrest of such person at the courthouse, independently of any individualized suspicion or other reason for justifying such a search. Docket # 66-2, p. 9.

She further argues that the policy requiring strip searches and/or bodily cavity searches of all persons arrested in the Puerto Rico courthouses, without individualized suspicion, has existed for the past nine years, and as a result, thousands of people must have been subjected to these illegal searches. Therefore, Plaintiff avers that there are questions of law and fact common to all those who have been strip searched without individualized suspicion under this policy. According to Plaintiff, due to the numerosity of the class, the joinder of all of its members would be impractical. Furthermore, she argues that the individualization of the putative members' claims could lead to inconsistent and varying adjudications. Finally, Plaintiff contends that she can adequately represent and protect the members of the class. As such, Plaintiff argues that she has plead all the requirements set forth by

_____

FED. R. CIV. P. 23.

FED. R. CIV. P. 23(a) provides that, "one or more members of a class may sue or be sued as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Additionally, the moving party must show that at least one of Rule 23(b)'s requisites is met. In order for a class to be certified, this Court must issue a certification order. Moreover, even after certification, a court may alter or amend it prior to issuing its final judgment. Rule 23(c)(1)(c). The First Circuit has held that "[d]eterminations to certify a class depend on initial prediction and are always subject to revision." Tardiff v. Knox County, 365 F.3d 1, 6 (1st Cir. 2004).

While some courts have allowed strip search class actions, others have not. Id. at 4 (citations ommitted). District courts have broad discretion in deciding whether to certify a class. Bowe v. Polymedica (In re PolyMedica Corp. Sec. Litig.), 432 F.3d 1, 4 (1st Cir. 2005). The First Circuit has held that "a court has the power to test disputed premises early on if and when the class action would be proper on one premise but not another." Id. at 5. As such, "a district court is not limited to the allegations raised in the complaint, and should instead make whatever legal and factual inquiries are necessary to an informed determination of the certification issues." Id. at 6. In the present case, the existence of a clearly established blanket policy of strip searching is the first and most crucial factor in determining whether a class action is appropriate. At this juncture, this Court is not persuaded that Rule 23's class action requisites are met, insofar as there is controversy about the existence of a generalized policy of strip searches, its legality, and how many people have been affected by said alleged practice since September 22, 2005, the date which Plaintiff posits as a starting point. Plaintiff admits that Rivera-Reyes stated that "the policy was not contained in the manuals applicable to her service as a marshal." Moreover, Plaintiff's claim for damages also weighs against class certification since each putative class member will have to show specific damages suffered as a result of the

_____

alleged illegal cavity search. The First Circuit has noted that the "class action machinery is expensive," and a "court has the power to test disputed premises early on if and when the class action would be proper on one premise but not another." <u>Tardiff</u>, 365 F.3d at 4-5. Considering the above mentioned issues, this Court **DENIES without prejudice** Plaintiff's request to continue the case as a class action suit. Instead, this Court will grant the parties **60 days** to engage in discovery as to the additional defendants, and thereafter, inform this Court about their respective positions on this issue.

### Conclusion

Based on the foregoing, this Court grants Plaintiff's request to file an amended complaint is **GRANTED in part and DENIED in part**. Specifically, Plaintiff's request to include Julio Jurado-Valentín, Chief Marshal in the Puerto Rico Marshal's Service, and Alfonso Díaz, First Deputy to the Chief Marshal, as defendants in the present case is **GRANTED**. However, Plaintiff's request to continue the case as a class action is **DENIED without prejudice**.

**SO ORDERED.**

In San Juan, Puerto Rico, this 31st day of March, 2009.

*S/Salvador E. Casellas*
SALVADOR E. CASELLAS
U.S. Senior District Judge